UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL A. GOLDTHRITE,

                Plaintiff,

v.

**DECISION AND ORDER**
09-CV-410S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.      Plaintiff Paul Goldthrite challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff applied for Social Security Income (SSI) on September 6, 2005, alleging that he had been disabled since June 1, 2003, due mainly to schizophrenia, a cognitive impairment, a seizure disorder, and asthma. Plaintiff contends that his impairments have rendered him unable to work. He therefore asserts that he is entitled to payment of disability benefits under the Act.

2.      Plaintiff received notice that his application for benefits was denied on or around March 3, 2006. He thereafter requested an administrative hearing, which was held before ALJ Bruce R. Mazzarella on April 23, 2008, at which time Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on October 9, 2008, issued a decision denying Plaintiff's application for benefits. On March 19, 2009, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on April 29, 2009, challenging Defendant's final decision.[1]

---

[1] The ALJ's October 9, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On February 5, 2010, both the Government and Plaintiff filed Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 6, 2005, the date he applied for Social Security income (R. at 24);[2] (2) Plaintiff has severe schizophrenia, a borderline IQ, post traumatic stress disorder (PTSD), marijuana and alcohol abuse, seizure disorder manifested through petit mal seizures, and asthma (R. at 24); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 24); (4) Plaintiff has the residual functional capacity to perform work, subject to the following limitations: he should not operate motor vehicles, work at unprotected heights, nor work in unventilated areas containing high concentrations of dust, fumes, gas, and/or vapors. Moreover, Plaintiff is limited to performing simple repetitious tasks in a low contact work environment with the general public, coworkers, and supervisors, and cannot perform work that is known to be inherently stressful or involve a good deal of changes in work assignments (R. at 28); and (5) Plaintiff is capable of performing past relevant work as a janitor/cleaner, because this work does not require the performance of work-related activities that are precluded by his residual functional capacity (R. at 29). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, since September 6, 2005, the date on which the application was

---

[2] Citations to the underlying administrative record are designated as "R."

filed. (R. at 30).

10. Plaintiff's first challenge to the ALJ's decision is that he erred in failing to find that Plaintiff's condition meets or equals the listing at §12.05. The Commissioner's regulations, found at 20 C.F.R. 404, Subpart P, Appendix 1, describe "listed" impairments, which are those impairments deemed sufficient to satisfy "the irrebuttable presumption of disability." Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000). The "Listing" at §12.05 includes four definitions for mental retardation, specifically subsections A, B, C, and D. Mental retardation refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. 404, Subpart P, Appendix 1. To establish mental retardation, §12.05 specifically requires that the evidence demonstrate or support an onset of the impairment before the age of 22.

Plaintiff maintains that the ALJ should have found him mentally retarded under Subsection C, which requires:

> (1) A valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

An individual who is found to meet these requirements is presumed disabled at step three without further inquiry. 20 C.F.R §404.1520(a)(4)(iii). Plaintiff contends that he meets both requirements of the §12.05C test based on his IQ scores, and physical and mental impairments. He further maintains that his mental retardation existed before age 22.

11. On or around December 12, 2005, Dr. Dickinson, a consultative examiner for the Social Security Administration, administered the Wechsler Adult Intelligence Scale test to Plaintiff to determine his IQ. Based on his evaluation, Dr. Dickinson concluded that

5

Plaintiff has a learning disorder, with 3rd grade spelling and math levels, an 8th grade reading level, and a borderline intellectual level. (R. at 27, 153). Plaintiff had a verbal IQ of 77, performance IQ of 68, and a full scale IQ of 70. (R. at 153). According to §12.00(D), "in cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided, we use the lowest of the three in conjunction with 12.05." 20 C.F.R. 404, Subpart P, Appendix 1. Thus, the ALJ was required to use Plaintiff's performance IQ score of 68 in determining whether he met listing 12.05C.

The ALJ failed to find or consider that Plaintiff's IQ scores met the listing requirements of §12.05C, in that they were between 60 and 70. The ALJ simply stated that, "the paragraph "C" criteria of listing §12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70. . ." (R. at 28). It is unclear why the ALJ failed to note Dr. Dickinson's evaluation. Perhaps he focused on the fact that this evaluation occurred after Plaintiff turned 22. But absent evidence of sudden trauma that can cause retardation, which is not present in this case, IQ tests create a rebuttable presumption of a fairly constant IQ throughout a person's life. Santiago v. Astrue, No. 07-CV-6239, 2008 WL 2405728, *4 (W.D.N.Y. June 11, 2008) (citing Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001)) (finding that the plaintiff met the criteria for mental retardation despite not being IQ tested until after age 22). Absent evidence of a change in a plaintiff's intellectual functioning, it is appropriate to assume that the results of an IQ test administered after age 22 accurately reflects the plaintiff's IQ prior to age 22. Vasquez-Ortiz v. Apfel, 48 F.Supp.2d 250, 257 (W.D.N.Y.1999) (finding that plaintiff met the requirements for §12.05 despite not being tested until age 42).

Because the record reflects an IQ score of 68 and no evidence of any change in

6

intellectual functioning, the onset of Plaintiff's mental retardation is deemed to have occurred before age 22. The ALJ's failure to make this finding is reversible error. Plaintiff's performance score of 68 on the Wechsler IQ test clearly falls within the interval of 60-70, as required in §12.05C of 20 C.F.R 404, Subpart. P., Appendix 1. (R. at 153).

12.     Along with a qualifying IQ score, courts have found that circumstantial evidence may also be used to infer that deficits in adaptive functioning began before age 22. For example, evidence that a claimant attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math, is instructive. MacMillan v. Astrue, No. 1:07-CV-0959, 2009 WL 4807311, at *6 (N.D.N.Y. Dec. 7, 2009); see also Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007).

Here, Plaintiff has suffered serious cognitive problems since he was a young child. He has had psychotic symptoms since age four, when he began hearing voices. (R. at 443). Plaintiff was also placed in special education classes, where he was given extra time with tests, and took them in an environment where he could ask questions when necessary. (R. at 48, 150, 157, 502). Furthermore, Plaintiff obtained only a 10th grade education. (R. at 150, 157). He eventually received his GED, although he noted some difficulty in obtaining such degree. (R. at 502). The Social Security Administration's own consultative examiner found that Plaintiff had a learning disorder, with severe deficiencies in both math and spelling (3rd grade level). (R. at 153).

This evidence, combined with Plaintiff's IQ score of 68, further supports this Court's finding that the onset of Plaintiff's mental retardation occurred before age 22. Therefore, the first prong of §12.05C is met.

13.     Plaintiff argues that the ALJ also failed to find that he meets the second prong of the §12.05C test, which requires a finding that Plaintiff has a physical or mental

impairment that imposes an additional and significant work-related limitation of function. In his decision, the ALJ simply stated that "the paragraph "C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. at 28). The ALJ therefore did not examine Plaintiff's impairments and their impact on his ability to work.

At step two, the ALJ determined that Plaintiff has severe schizophrenia, a borderline IQ, post-traumatic stress disorder (PTSD), marijuana and alcohol abuse, seizure disorder manifested through petit mal seizures, and asthma. (R. at 24). But at step three, the ALJ determined that, as far as the severity of Plaintiff's impairments are concerned, considered individually and in combination, they did not meet the requirements from the appropriate listing to deem Plaintiff disabled without further analysis. According to the ALJ, nothing in the record shows that Plaintiff experiences the severity or frequency of seizures required to meet the listings at §11.02 or §11.03, nor does he experience any seizure activity when he takes his seizure medications. (R. at 25). Furthermore, the ALJ found that Plaintiff's asthma did not meet the requirements from listing §3.03, because Plaintiff conceded that his asthma would not interfere with his ability to work at all, as he still smokes nearly a pack of cigarettes a day despite his asthmatic condition. (R. at 25, 518-19).

Plaintiff takes issue with the ALJ's determination that his schizophrenia fails to meet the requirements from listing §12.05. Plaintiff claims that his psychotic symptoms began at age four, when he began hearing two voices in his head — that of his dead grandmother and the other of "Sunny," who was a friend that had also died. (R. at 443). Plaintiff's sister, who accompanied him to his consultative exams, confirmed that Plaintiff suffered from mental illness since childhood. (R. at 158). The voice of "Sunny" has a significant affect

on Plaintiff's ability to work because it tells him to harm himself and others. (R. at 523). Due to "Sunny," Plaintiff unsuccessfully attempted suicide. Plaintiff also experiences flashbacks to episodes of abuse that he suffered as a child, allegedly at the hands of his mother's boyfriend. (R. at 443). Plaintiff claims that these flashbacks, along with the voices, exacerbate his schizophrenic tendencies. Plaintiff argues that his schizophrenia, combined with his susceptibility to petit mal seizures, significantly limits his ability to work.

The test for evaluating whether a claimant's impairment imposes "an additional and significant work-related limitation of function" is the same test used at step two of the sequential evaluation to determine whether an impairment is "severe." MacMillan v. Astrue, No. 1:07-CV-0959, 2009 WL 4807311, *7 (N.D.N.Y. Dec. 7, 2009). Therefore, if the ALJ determines at step two that Plaintiff's impairments are "severe," which the ALJ did here, the criteria for the second prong of the §12.05C two-part test are satisfied. Consequently, Plaintiff meets the second prong of the two-part test in §12.05C. Thus, all of the required conditions for §12.05C have been met, and Plaintiff should have been found disabled at step three.

14.    Remand for calculation of benefits is proper when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Mohamed v. Astrue, No. 08-CV-0598, 2010 WL 2640541, *7 (W.D.N.Y. June 29, 2010) (citing Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004)). Remand for calculation of benefits is also proper when the record "compel[s] but one conclusion under the . . . substantial evidence standard." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

15. For the reasons set forth above, this Court finds that the ALJ's decision denying Plaintiff disability benefits is not supported by substantial evidence. Rather, this Court finds that there is substantial evidence in the record to establish that Plaintiff meets listing §12.05C in Appendix 1 of the regulations. The ALJ's failure to apply and discuss the two-part test from §12.05C constitutes reversible legal error. Moreover, because this Court finds further evidentiary proceedings unnecessary, this matter will be remanded for calculation of benefits.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for calculation of benefits.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: July 27, 2010
      Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court